147 Ind. App. 153 (1970)
259 N.E.2d 99
HEETER
v.
WESTERN BOONE COUNTY COMMUNITY SCHOOL CORP.
No. 669A94.
Court of Appeals of Indiana.
Filed June 10, 1970.
Rehearing denied July 10, 1970.
Rehearing denied July 27, 1970.
Transfer denied November 16, 1970.
*154 Jame P. Buchanan, Stewart & Richardson, of counsel, of Lebanon, Campbell, Malan, Kyle & Proffitt, of Noblesville, for appellant.
Roscoe Hollingsworth, Scifres, Hollingsworth & Martin, of Lebanon, Isaac D. Gregg, of Thorntown, for appellee.
*155 SHARP, J.
The Plaintiff-Appellant, Albert Heeter, filed his Complaint on the basis of quantum meruit for services rendered as a licensed architect against the Defendant-Appellee, The Western Boone County Community School Corporation. The Defendant-Appellee filed answer in two legal paragraphs, the first in admission and denial under Rule 1-3 of the Rules of our Supreme Court. The second paragraph of answer in effect sets up affirmative matter in order to bring the case within the provisions of the so-called Township Reform Act of 1899, the same being Burns' Indiana Statutes Annotated, §§ 65-303 through 65-325. The Plaintiff-Appellant filed a reply to the second paragraph of answer. The Appellee filed a Motion for Summary Judgment supported by affidavits. The Appellant also filed Motion for Summary Judgment supported by the affidavit of the Appellant and the affidavit of attorney James P. Buchanan. Since the question involved in this case is one of law and not fact, we will limit our summary of the contents of the pleadings and affidavits, which are very voluminous, to the important salient facts necessary to understand the dispute in this case.
The Appellant as a licensed architect rendered professional services in regard to a school construction and remodeling program for the Thorntown School which is in Sugar Creek Township, Boone County, Indiana, during the period commencing in June 1962 and ending in September 1965. Before August 3, 1963, said school was operated as a township school. On May 25, 1964, the Metropolitan School District of Western Boone County was created and took over the operation of said school. The Defendant-Appellee, The Western Boone County Community School Corporation, came into existence on January 1, 1965, and took over the operation of said school. That under all three governing school corporations one Robert Gibbs was Superintendent. Various meetings were held between the Appellant and the governing boards of the Township, Metropolitan and Community School Corporations. All of the governing board members of each *156 successive corporation had full knowledge that the Appellant was planning and creating a program of school construction and remodeling and no dissent or disapproval thereof was ever expressed. On November 6, 1963, an application for approval to the State Department of Public Instruction was filed.
During the period of time covered by the Appellant's services there was a cumulative building fund in excess of $75,000.00 for the purpose of financing said construction and remodeling program. On June 16, 1964, the State Common School Building Fund Commission advanced the sum of $197,000.00 for said construction and remodeling program. At all times relevant there was money in the treasury of the various school corporations to pay for Appellant's services. On at least three occasions Appellant asked the various governing boards to enter into a written contract of employment with him and each time he was assured by Robert Gibbs that he would be employed as an architect throughout all phases of construction and remodeling.
On April 21, 1969, the trial court entered Summary Judgment in favor of the Appellee and states the reasons for the same as follows:
"1. The alleged work as an architect as performed by the plaintiff was done voluntarily for the purpose of securing employment as architect on the future construction of school house additions.
2. No appropriation of funds to pay for such work was ever at any time made by the advisory board of Sugar Creek School Township, nor by either of the governing trustees of the two succeeding Metropolitan School Districts.
3. No contract was at any time executed or entered into between the plaintiff and the township trustee or either of the succeeding governing bodies of the two succeeding metropolitan school districts.
4. No action of any kind by the advisory board of Sugar Creek School Township or by either of the two metropolitan school district boards of trustees and no minutes of any action so taken were ever entered of record by *157 said advisory board or either of said two metropolitan district boards by which the plaintiff was hired or by which any person, officer or committee was authorized to hire the plaintiff or any architect to prepare plans for school house construction.
5. The plaintiff knew that no appropriation had been made and made repeated requests that he be hired by a standard form of contract and was each time informed by the attorney for the governing board that because of the lack of an appropriation, he could not be given a contract of hiring.
6. In spite of the governing bodies' failure to hire him and in spite of their failure or refusal to appropriate funds to pay for his alleged services, the plaintiff did continue to work on preliminary schematic drawings upon his asserted assurance by the superintendent of schools that he would be hired.
7. The school superintendent lacked legal or delegated authority to engage the services of an architect.
8. The standard form of contract requested by the plaintiff to be signed, both by the trustee and advisory board, and by the two governing bodies of the two metropolitan districts contained at Article 2 of said contract the following provision:
`Before any preliminary work is performed by the architect ... it is the owner's further duty to prepare a statement certifying that the necessary appropriation has been made and recorded in page ____ in the ________ appropriation record.'
And it was further provided by Article 2 of said contract that:
`It is hereby further understood and agreed that it shall be the duty of the architect before beginning any preliminary work and without charge to the owner, to investigate fully the correctness of the said verified statements, and thus satisfy himself that there at present is, or will be available by appropriation, the sale of bonds, borrowing or otherwise, funds to pay for the contemplated work and necessary expense.'
`In the event that the architect shall fail to secure such verified statement from the owner and shall fail to verify the same by proper personal investigation, then the architect shall not be entitled to payment for his services in preparing the drawings and specifications.'

*158 9. The plaintiff is not entitled to recover on quantum meruit or on an express or implied contract in this case for the reason that no funds were ever appropriated to pay for his alleged services.
10. The executive officers of the school township and of the metropolitan school districts did not have the legal authority to pay out funds without prior appropriation of the same."
For the legal effect of filing cross motions for summary judgment see Fischer v. Kaylor, 145 Ind. App. 148, 250 N.E.2d 19 (1969), at page 22, where this court stated:
"We further hold that in the context of such cross motions for summary judgment each party concedes that there is no genuine issue as to a material fact only for purposes of his own motion. The Appellant has not conceded or waived the lack of genuine issue as to a material fact by filing his cross motion for summary judgment and is therefore free to raise this issue on appeal here."
Counsel for both parties have filed excellent and comprehensive briefs for the court's consideration and have made helpful and informative oral arguments in the case. It is necessary for us to examine the pleadings and affidavits in this case by considering the law with reference to summary judgment and the substantive law regarding the liability of this Community School Corporation for this claim for architectural services rendered based upon quantum meruit.
We must examine the pleadings and affidavits in the light most favorable to the Appellant, the party against whom summary judgment was sought, and resolving all doubts in his favor. In such consideration we must determine as a matter of law whether the Appellant under any circumstances has a valid cause of action against the Appellee upon which the trier of fact might find for the Appellant. Wozniczka v. McKean, 144 Ind. App. 471, 247 N.E.2d 215 (1969) (trans. den.). See also Central Realty, Inc. v. Hillman's Equipment, Inc., 144 Ind. 18, 246 N.E.2d 383 (1969).
*159 For the Appellant's case to survive the test set forth in Wozniczka v. McKean, supra, he must rely almost exclusively upon the opinion of this court in Reith-Riley Construction Co., Inc. v. Town of Indian Village, Indiana, 138 Ind. App. 341, 345, 214 N.E.2d 208 (1965), in which Judge Wickens, speaking for this court, stated:
"This state has attempted to limit its liability and that of its units, the cities, towns and others by specified statutes requiring formality of proceedings, contracts, bids, and specifications. These enactments have been held binding in various degrees over the years.
One of the early cases held that claims against a county `can exist only ... where there is a statute providing for them and directing compensation.' Moon v. The Board of Commissioners of Howard County (1884), 97 Ind. 176, 177.
But later where a city employed the plaintiff on a commission basis to attempt to secure a reduction of its bonded indebtedness, our Supreme Court held the agreement binding despite the fact that it was not in writing or supported by yea and nay voting records of the common council, evidently then required by statute. There the court held the city possessed certain `incidental powers' and agreements made in accordance were not void. It was also held where agreement could be made without particular conditions or formalities, they might be ratified in like manner. The City of Logansport v. Dykeman et al. (1888), 116 Ind. 15, 19, 20, 17 N.E. 587.
We recognize some ambiguity in the language of that opinion, and that the writer distinguishes it from street improvement cases. But we accept the rational thereof as appropriate in this matter because we are here also primarily concerned with lack of formality.
In Schipper v. The City of Aurora (1889), 121 Ind. 154, 22 N.E. 878, 6 L.R.A. 318, the city defended a suit for services on the ground that it had exceeded its authority in executing a lease the city said was void. In reversing a decision in favor of the city our Supreme Court held that even if the lease were void, it by no means follows that the city may retain the benefit of the work performed without paying. At page 158 of 121 Ind. the court said further:
`Where a city or municipality receives the benefit of money, labor or property upon a contract, made without *160 due formality, or which it had no authority to make, and which it refuses to execute, it will nevertheless be liable to the person conferring the benefit to the extent of the value of what has been received and appropriated, unless the contract was prohibited by statute, or in violation of public policy.'
In another case, Boyd et al. v. Black School Township (1889), 123 Ind. 1, 23 N.E. 862, atownship was sued on a note it had given to purchase school furniture. Its defense was that the trustee had no power to bind the township by contracting a debt in excess of funds on hand to which the debt is chargeable, and funds to be derived from tax assessed against his township for the year the debt is to be incurred, without first procuring an order from the County Commissioners as provided by a certain statute. There the opinion concedes the debt was contracted in violation of the statutory provisions applicable. However, the court at page 3 of 123 Ind. said:
`[W]here it fairly appears that the contract was invalid for want of a compliance with the statute, the right to recover does not rest upon the contract, but upon the fact that the township received and enjoyed the benefit of property suitable and necessary for the use of the schools.'
The improvement of streets is an integral part and purpose of town government. The original 1905 statutory enactment, which is still in effect, prescribed the powers of town Boards of Trustees and enumerated 22 powers, one of which is:
`Ninth. To lay out, open, change, pave and otherwise improve the streets, alleys, sewers, sidewalks and crossings of the town, and keep them in repair; and also to change or vacate such streets or alleys, and to regulate the use of streets and alleys by vehicles, and to designate the kind of vehicles that may not be used on certain named streets that have been improved.' Acts 1905, ch. 129, § 31, p. 219, § 48-301 Burns' 1963 Replacement.
Another section of the 1905 act expressly provides `exclusive power' over the streets within the town and improvement thereof and authorizes the `payment of such cost out of the general treasury of such city or town.' Acts 1905, ch. 129, § 267, p. 219, § 48-503 Burns' 1963 Replacement.
So, a town is specifically authorized to lay out and maintain streets and pay therefor. Acting informally here it received the benefit of street improvement and the value *161 of the same has been determined and settled. The improvement was made pursuant to a writing which is definite as to the work, material and charge. The execution of such instrument was not clandestine, but followed open discussion at a meeting where other town business was transacted and which meeting was attended by the citizens. It does not appear certain that the contractor was informed that any question of validity existed until after he had fully performed his part of the contract and his bill was sent, received, and ordered paid by the Board of Trustees at a customary meeting.
It is our opinion that this matter falls within the rules of law set forth in the last above quoted cases. We also agree with the general proposition that there is not one law for the state and another for its subjects. Where the state contracts with individuals the rights and obligations of the contracting parties rest on the same principles as if both parties were private persons. State v. Feigel (1931), 204 Ind. 438, 445, 178 N.E. 435.
Under the particular circumstances here if the contract be invalid for want of compliance with a statute but the town receives and enjoys the benefits, the town is nevertheless liable to pay the actual value of what it received. Schipper v. The City of Aurora, supra; Boyd et al. v. Black School Township, supra.
Though these principles are not available where the purported contract is ultra vires in the sense that it is wholly beyond the scope of the town's powers, we are not concerned with such a situation. The improvement of streets is well within the scope of the powers of Indian Village.
Since the law applicable here is that recovery is warranted under quantum valebant, we find the decision contrary to law. A purely negative judgment may be contrary to law where its general scope and meaning are contrary to the principles of law applicable to the case and not merely defective in some particular. Warren Company, Inc. v. Exodus (1944), 114 Ind. App. 651, 653, 54 N.E.2d 775."
It is very apparent that the intent and purpose of the language of this court in Reith-Riley, supra, was cased in a broad mold. This is evident from the choice of authority and from the language above quoted. There are several salient facts which Judge Wickens sets forth as requisites for recovery. They are:

*162 (1) There must be proof that services were rendered in favor of the minicipal corporation in question.
(2) Such services must have been rendered with the full knowledge of the governing body of such municipal corporation.
(3) The governing body of such municipal corporation has knowingly accepted the benefits of such services.
(4) The purported contract for such services shall not be wholly beyond the scope of the municipal corporation's powers.
In this case it is contended that the Appellant rendered services to the Appellee and that the Appellee through its Board of Trustees knowingly accepted the benefit of such services. Of course, it is also incumbent upon the Appellant to sustain his burden of proof with reference to the other issues as outlined in the Reith-Riley case.
It is the position of the Appellee that any agreement between the Appellee and the Appellant is absolutely void and unenforceable under the theory of quantum meruit because there was no written record made by the governing body in regard to the services of the Appellant and there was no appropriation for the same.
The pleadings and affidavits in this case disclose that the Appellant performed valuable services as an architect which were accepted by the Appellee and that the chief administrative officer of the Appellee school corporation had assured the Appellant that he would be paid for his services and that was done in the presence of the members of the Board of Trustees of the Appellee at a meeting of such board. It is also apparent from such pleadings and affidavits that the Appellant's services were used for designing and planning the construction of the school building. The power to improve school houses has been expressly conferred by statute. See Burns' Indiana Statutes Annotated § 28-2425. Thus, the Appellee was in the exercise of one of its express statutory powers, i.e., the building and improvement of a school house. *163 The superintendent of the metropolitan school district also has the duty to make recommendations to the board concerning the construction of buildings. See Burns' Indiana Statutes Annotated § 28-2450. The Board has a duty to act upon such recommendations. See Burns' Indiana Statutes Annotated § 28-2449.
In Indiana a school corporation cannot proceed to construct a new building or a school house addition unless the school board first engages an architect to prepare the plans and specifications. Burns' 63-129(a) reads as follows:
"(a) Except as hereinafter otherwise provided, the state of Indiana, nor any board, department or agency thereof, nor any county, city, town, township, school corporation or other political subdivision of this state shall engage in the construction, alteration or maintenance of any public building or public work involving the practice of architecture for which plans, specifications and estimates have not been prepared, certified and sealed by, and the construction, alteration or maintenance executed under the direct supervision of an architect, which architect shall be the holder in good standing of a certificate of registration from the board of registration for architects entitling him to practice architecture in this state.
Burns' 63-129 (b) reads in pertinent part as follows:
"(b) No official of this state, nor of any city, town, county, township or school corporation thereof, now or hereafter charged with the enforcement of any law, ordinance or regulation relating to the construction or alteration of buildings or structures, shall use or accept or approve any plans or specifications that have not been prepared by, or under the supervision of, and certified by a registered architect: Provided, That the provisions of this subsection shall not apply if such plans of specifications have been prepared by, or under the supervision of and certified by a professional engineer who is registered under the laws of the state of Indiana: * * *"
Thus, the law recognizes that school boards do not possess the necessary expertise to devise preliminary plans or to *164 determine construction costs and procedures without the preliminary services of an architect. It is also apparent that without the services of an architect the governing body of the Appellee would have been unable to negotiate with the State of Indiana for approval and financing with reference to the school construction in question. During the time covered by the Plaintiff-Appellant's Complaint there was no statute in the State of Indiana which expressly prescribed the manner and procedure which a school corporation was required to follow to engage the preliminary services of an architect.
The Appellee contends that at the inception of any purported contract with the Appellant the Thorntown School was operated as a township school and therefore the so-called Township Reform Act of 1899, the same being Burns' Indiana Statutes Annotated, §§ 65-303 through 65-325 would apply. The Appellee is correct with reference to the application of the Township Reform Act as to any services rendered by the Appellant while the Thorntown School was operated as a township school. Burns' Indiana Statutes Annotated, § 65-313, provides:
"Special meetings  Loans.  Upon a special call of the township trustee, or the chairman of the advisory board or a majority of the members of said board, given in writing to each member thereof, stating the time, place and purpose of the meeting, said board may, if a quorum be present, by consent of a majority of all the members present, determine whether an emergency exists for the expenditure of any sums not included in the existing estimates and levy. In the event that such an emergency is found to exist, said board may authorize, by special order entered and signed upon the record, the trustee to borrow a sum of money, to be named, sufficient to meet such emergency; and, at the next annual session of the board, a levy shall be made to the credit of the fund for which such expenditure is made to cover and pay the debt so created:
* * *
In no event shall a debt of the township be created except by the advisory board of such township, and in the manner herein specified, and any payment of any debt not so authorized from the public funds of such township shall be *165 recoverable upon the bond of the trustee, in a suit which it is hereby made the duty of said board to institute and prosecute, in the name of the state, for the use of said township. * * *"
Burns' Indiana Statutes Annotated, § 65-321, provides:
"Contracts void.  All contracts made in violation of this act shall be null and void."
In Peck-Williamson, etc. Co. v. Steen School Tp., 30 Ind. App. 637, 639, 66 N.E. 909 (1902), this court stated:
"A claim against a township is not valid unless it is founded upon a statute, or upon a contract entered into with the proper person in accordance with the provisions of the statute. Sherfey, etc., Co. v. Board, etc., 26 Ind. App. 66; Martin v. Board, etc., 27 Ind. App. 98. The complaint contains no averment tending to show a compliance by the trustee with the statute. Section eleven is therefore applicable. `All contracts made in violation of this act shall be null and void.' § 8085k Burns 1901.
There can be no recovery upon the notes. Neither can there be a recovery upon the quantum meruit. It is common knowledge that under the law as it formerly stood extravagant and fraudulent purchases by trustees were frequently made. The act was designed to remedy an existing evil. Its provisions are not formal, but material and substantial. The trustee who does not observe them can not bind his township, either directly or indirectly. The contract made by him otherwise is void. Being void, it can not be ratified. No subsequent act can estop the township from setting up its invalidity. The delivery and acceptance of goods under it does not create an obligation to pay therefor. So to hold would be to nullify the act and to declare that a void contract could be made valid by being persisted in. Wrought Iron Bridge Co. v. Board, etc., supra; Dickinson v. City of Poughkeepsie, 75 N.Y. 65; McGillivray v. Joint School District, 112 Wis. 354, 88 N.E. 310, 58 L.R.A. 100, 88 Am. St. 969; Kramrath v. City of Albany, 127 N.Y. 575; La France Fire-Engine Co. v. City of Syracuse, 68 N.Y. Supp. 894; People, ex rel., v. Gleason, 121 N.Y. 631, 25 N.E. 4. (our emphasis)
In First National Bank v. Van Buren School Township, 47 Ind. App. 79, 86, 93 N.E. 863 (1910), this court stated:

*166 "The trustee who seeks to bind his township must proceed in the manner provided by statute and within the powers given by statute. Otherwise his contracts are void, and no subsequent act can estop the township from setting up their invalidity. Nor can any action now be maintained against a township on a quantum meruit. Peck-Williamson, etc., Co. v. Steen School Tp. (1903), 30 Ind. App. 637; Clinton School Tp. v. Lebanon Nat. Bank, supra; Lee v. York School Tp. (1904), 163 Ind. 339.
In Miller v. Jackson, 178 Ind. 503, 519, 99 N.E. 102 (1912), our Supreme Court stated:
"Since the enactment of the act of 1899, supra, a contract made in violation of the statute is void, and a claimant cannot recover thereunder anything from the township, even though the contract on claimant's part, has been fully executed."
We, therefore, hold that the Township Reform Act of 1899 completely bars Appellant's recovery, under any theory, during that period of time when he was dealing with the Sugar Creek Township School of Boone County, Indiana. We further hold, that the Township Reform Act would have no effect upon his dealings with the Metropolitan School District and the Appellee Community School Corporation. The granting of Appellee's Motion for Summary Judgment as it affects the period of time when the Appellant was dealing with Sugar Creek School Township, Boone County, Indiana, should be affirmed.
It is obvious that the Township Reform Act of 1899 does not apply to a Metropolitan School Corporation or to a Community School Corporation. It is elementary that the Appellant must prove his cause of action against the Appellee-Defendant and the Township Reform Act is not a defense available to this Community School Corporation. If the Appellant can prove all of the elements set forth in Reith-Riley case as to this Appellee, then recovery could not be prevented by reference to the Township Reform Act.
*167 In the last analysis the rules of liability as set forth in Reith-Riley are of sufficient scope to permit the Appellant to allege and prove his cause of action here under the theory of quantum meruit. Of course, the Appellant still has the burden of proof and the burden of persuasion with reference to the allegations of his amended complaint. When the pleadings and affidavits in this case are considered in the light most favorable to the Appellant, the party against whom summary judgment was sought, and all doubts are resolved in his favor, we cannot see how as a matter of law the Appellant under no circumstances has a valid cause of action against the Appellee upon which the trier of fact might find for the Appellant.
Therefore, we affirm the trial court's granting of a summary judgment for the Appellee for services rendered by the Appellant during the period of time when the Thorntown School was operated by Sugar Creek School Township of Boone County, Indiana. We overrule the granting of summary judgment by the trial court for the Appellee for services rendered by the Appellant during that period of time when the Thorntown School was operated by either the Metropolitan School District or a Community School Corporation. The trial court is hereby instructed that at the trial on the merits of this case proof of dealings or services rendered by the Appellant while dealing with Sugar Creek Township of Boone County, Indiana, should be excluded from the trial. This case is hereby remanded for proceedings conistent with this opinion.
Affirmed in part. Reversed in part and remanded. Costs v. Appellee.
Hoffman, P.J. and Pfaff, J., Concur.
White, J., Dissents without opinion.
NOTE.  Reported in 259 N.E.2d 99.