**Phyllis BARRETT, sole presumptive dependent of Jerry Barrett, Appellant,**

v.

**CITY OF BRAZIL, Appellee.**

**No. 93A02–0907–EX–683.**

Court of Appeals of Indiana.

Jan. 19, 2010.

Rehearing Denied April 6, 2010.

Gerald H. McGlone, McGlone Law, Terre Haute, IN, Attorney for Appellant.

Edward J. Liptak, Jeremy M. Dilts, Carson Boxberger LLP, Bloomington, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Phyllis Barrett appeals the Worker's Compensation Board's dismissal of her application for benefits. We reverse and remand.

### Issue

Phyllis raises the sole issue whether the Board erred in dismissing her claim.

### Facts and Procedural History

While working for the City of Brazil ("Employer") on June 3, 2004, Jerry Barrett came in contact with untreated wastewater. His supervisor advised him to go home to change clothes. Halfway through his shift, Jerry informed a coworker that he was going home to change clothes and eat.

In route, Jerry's vehicle and one driven by Tracey Burk approached the same rural intersection. Burk failed to yield and

turned left into Jerry's path. The subsequent collision resulted in Jerry's death.

At the time of the collision, Burk had in his possession $5000 in cash. He pled guilty to a felony and was ordered by the court to pay Phyllis $4350 in restitution. Ronald Wesley owned the vehicle that Burk was driving, but was not in the car at the time of the collision.

Wesley's insurer, GEICO Direct Insurance Company ("GEICO"), paid Phyllis $50,000, the policy limit, in consideration of a release of Wesley, GEICO, "and their officers, employees, principals, shareholders, executors, administrators, agents, attorneys, successors, insurers and assigns." Appendix at 143. Burk was an insured under the terms of Wesley's policy.

Additionally, Indiana Farmers Insurance Company ("FARMERS") paid Phyllis the maximum benefit of $50,000 pursuant to the terms of her underinsured motorist coverage. There is no dispute that the two settlements were "made without the knowledge or consent of [the Employer's] worker's compensation insurer." *Id.* at 89–90.

Thus, as of July 2005, Phyllis had received $104,350. The parties agree that, if owed, the worker's compensation benefits would exceed what Phyllis received in restitution and third-party settlements, possibly by more than $72,000.

In May 2006, Phyllis applied for worker's compensation benefits. The Employer moved to dismiss, arguing, among other reasons, that, pursuant to Indiana Code Section 22–3–2–13, the payments from GEICO and FARMERS prohibited Phyllis from receiving worker's compensation benefits. A single hearing member of the Board granted the Employer's motion to dismiss, based solely upon the third-party settlements. The Board affirmed the dismissal.

Phyllis now appeals.

## Discussion and Decision

### I. Standard of Review

■ Phyllis argues that the Board erred in granting the Employer's motion to dismiss. Indiana Trial Rule 12(B) provides as follows:

> If, on a motion, asserting the defense number (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.

The parties submitted and the single hearing member considered matters outside the pleading, so we apply a summary judgment analysis. *Estate of Heck ex rel. Heck v. Stoffer*, 786 N.E.2d 265, 267–68 (Ind.2003). The trial court shall grant summary judgment "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). In reviewing the entry of summary judgment, we apply the same standard as the trial court. *Filip v. Block*, 879 N.E.2d 1076, 1080 (Ind.2008), *reh'g denied*. We construe all facts and reasonable inferences in favor of the nonmoving party. *Id.*

 The interpretation of a statute is a question of law, to be reviewed de novo. *Porter Dev., LLC v. First Nat'l Bank of Valparaiso*, 866 N.E.2d 775, 778 (Ind. 2007).

The first step in interpreting a statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question. When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases

be taken in their plain, ordinary, and usual sense. Clear and unambiguous statutes leave no room for judicial construction. However, when a statute is susceptible to more than one interpretation, it is deemed ambiguous and thus open to judicial construction. And when faced with an ambiguous statute other well-established rules of statutory construction are applicable. One such rule is that our primary goal of statutory construction is to determine, give effect to, and implement the intent of the legislature. *Sees v. Bank One, Ind., N.A.,* 839 N.E.2d 154, 157 (Ind.2005) (internal citations omitted). In addition, statutes concerning the same subject matter must be read together to harmonize and give effect to each. *Merritt v. State,* 829 N.E.2d 472, 475 (Ind. 2005). "Where provisions of a statute conflict, the specific provision takes priority over the general provision." *Robinson v. Wroblewski,* 704 N.E.2d 467, 475 (Ind. 1998).

■ "The Court presumes that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals." *Prewitt v. State,* 878 N.E.2d 184, 186 (Ind.2007). Here, the language of the Worker's Compensation Act is to be "construed to effectuate its humane purposes and doubts in the application of terms are to be resolved in favor of the employee." *Christopher R. Brown, D.D.S., Inc. v. Decatur County Mem'l Hosp.,* 892 N.E.2d 642, 649 (Ind.2008). However, the Act's applicability is fixed by statute and we cannot, by judicial pronouncement, enlarge its applicability beyond the intent of the General Assembly. *Id.*

## II. Analysis

■ Indiana Code Section 22–3–2–13 ("Section 13") addresses worker's compensation claims in which a claimant has received or may receive a payment from a third-party tortfeasor. The first paragraph of Section 13 requires a claimant to reimburse the employer or its insurer for payments from third parties.[1] Ind.Code § 22–3–2–13; *DePuy, Inc. v. Farmer,* 847 N.E.2d 160, 166 (Ind.2006). The second and third paragraphs address whether receiving payment from a third person prohibits the claimant from pursuing worker's compensation benefits. The second paragraph prohibits the award of worker's compensation benefits where the claimant has already received a settlement payment from a third-party tortfeasor:

In the event the injured employee or his dependents, not having received compensation or medical, surgical, hospital or nurses' services and supplies or death benefits from the employer or the employer's compensation insurance carrier, shall procure a judgment against the other party for injury or death, which judgment is paid, or if settlement is made with the other person either with or without suit, then the employer or the employer's compensation insurance carrier shall have no liability for payment of compensation or for payment of medical, surgical, hospital or nurses' services and supplies or death benefits whatsoever. . . .

Thus, where the claimant has received a settlement payment from a third-party tortfeasor, the employer "shall have no liability . . . whatsoever." *Id.*

Conversely, under Section 13's third paragraph, a claimant has a choice of rem-

---

1. On appeal, "[Phyllis] acknowledges that upon payment of the worker's compensation benefits, the worker's compensation insurance company would be entitled to a credit or reimbursement of some part of the [$104,350] she has already received, and she is prepared to pay, if necessary, whatever that amount is." Appellant Brief at 5.

edies when receiving payment other than by agreement.

> In the event any [claimant] shall procure a final judgment against the other person *other than by agreement,* and *the judgment is for a lesser sum than the amount for which the employer or the employer's compensation insurance carrier is liable* for compensation and for medical, surgical, hospital and nurses' services and supplies, as of the date the judgment becomes final, *then the [claimant] shall have the option* of either collecting the judgment and repaying the employer or the employer's compensation insurance carrier for compensation previously drawn, if any, and repaying the employer or the employer's compensation insurance carrier for medical, surgical, hospital and nurses' services and supplies previously paid, if any, and of repaying the employer or the employer's compensation insurance carrier the burial benefits paid, if any, *or of assigning all rights under the judgment to the employer* or the employer's compensation insurance carrier *and thereafter receiving all compensation* and medical, surgical, hospital and nurses' services and supplies, to which the [claimant] would be entitled if there had been no action brought against the other party.

*Id.* (emphasis added).

Thus, a resolution of the issue turns on whether Section 13's second or third paragraph controls where a worker's compensation claimant has received the maximum payment available from two liability carriers and restitution, as ordered by a trial court, from a third party. Reading the two paragraphs together, Section 13's second paragraph addresses paid judgments in general, while the third paragraph addresses only those judgments procured "other than by agreement" for less than "the amount for which the employer or the employer's compensation insurance carrier

is liable...." I.C. § 22–3–2–13. Applying the specific provision, rather than the general one, we conclude that paragraph three controls here. This conclusion is consistent with the need to construe the Worker's Compensation Act in a manner that effectuates its humane purposes and to resolve doubts in the application of terms in favor of the claimant. *Christopher R. Brown,* 892 N.E.2d at 649.

Here, Burk paid Phyllis $4350 in compliance with his restitution order. This payment was clearly made "other than by agreement." Furthermore, the parties agree that, if owed, the worker's compensation benefits would exceed the $104,350 that Phyllis has received. For these reasons, we reverse the Board's dismissal of Phyllis' claim.

■ Finally, we note that the Employer also argues that the ninth paragraph of Section 13 prohibits Phyllis from pursuing worker's compensation benefits because neither it nor its worker's compensation carrier consented to Phyllis' settlements with the other insurance companies. However, the Employer misreads the ninth paragraph, which provides as follows:

> No release or settlement of claim for damages by reason of injury or death, and no satisfaction of judgment in the proceedings, shall be valid without the written consent of both employer or the employer's compensation insurance carrier and employee or his dependents, except in the case of the employer or the employer's compensation insurance carrier, consent shall not be required where the employer or the employer's compensation insurance carrier has been fully indemnified or protected by court order.

I.C. § 22–3–2–13. Contrary to the Employer's argument, the ninth paragraph is not a prohibition of a claimant's receipt of worker's compensation benefits. Rather, it provides an employer or its worker's

compensation carrier with an opportunity to seek indemnification notwithstanding the existence of an unfavorable settlement to which it did not consent.

Based upon the foregoing analysis, we conclude that the Board erred in dismissing Phyllis' claim for worker's compensation benefits.

Reversed and remanded.[2]

BAKER, C.J., and ROBB, J., concur.

---

2. The Board did not address the Employer's argument that Jerry was outside the course and scope of his employment when the collision occurred. Therefore, the issue is not before us.