

FILED

Mar 25 2015, 10:03 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Christopher S. Roberge
Elizabeth A. Roberge
Anelia T.N. Ray
Roberge Law
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Douglas A. Hoffman
Jeremy M. Dilts
Carson Boxberger LLP
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

The Peoples State Bank,

*Appellant-Plaintiff,*

v.

Benton Township of Monroe
County, Indiana,

*Appellee-Defendant*

March 25, 2015

Court of Appeals Case No.
53A01-1409-PL-379

Appeal from the Monroe Circuit
Court
The Honorable E. Michael Hoff,
Judge
Cause No. 53C01-1305-PL-910

**Bailey, Judge.**

# Case Summary

[1]     The Peoples State Bank ("the Bank") appeals the denial of its motion to correct

error, which challenged a grant of summary judgment in favor of Benton

Township of Monroe County, Indiana ("Benton Township") upon the Bank's

collection complaint. The Bank presents a single, consolidated issue for review: whether summary judgment was improvidently granted to Benton Township as opposed to the Bank, upon the trial court's conclusion that a loan transaction was void. We affirm.

## Facts and Procedural History

[2] The relevant facts are not in dispute. In 2011, Benton Township Trustee Heather Cohee ("Cohee") secured a loan from the Bank to purchase a fire truck. She acted without a prior appropriation of funds by Benton Township or compliance with statutory procedures allowing taxpayers an opportunity to remonstrate.[1]

[3] In order to procure the loan, Cohee produced paperwork including minutes of a township board meeting held on October 24, 2011, at which the fire truck replacement plan and need for bids was favorably discussed. Also included were a notice of a public hearing regarding plans for a new fire truck, a notice to bid, and minutes of a meeting where the successful bidder – Wynn Fire Equipment, LLC ("Wynn") – was selected.

[4] Benton Township part-time employee Danielle Coe executed a promissory note for $335,295, signing as the Benton Township Trustee. The Bank then deposited $335,295 into Benton Township's checking account. Benton

---

[1] However, there is no evidence that she acted contrary to the wishes of the Benton Township Board.

Township paid Wynn $287,149 for a fire truck and $616.52 for some related equipment. The excess loan proceeds of $47,529.48 that had been deposited into Benton Township's account were used for other township purposes.

[5] Benton Township did not pay the promissory note installments as they came due. Cohee resigned amidst allegations of financial improprieties unrelated to the fire truck acquisition. On January 28, 2012, the Indiana State Board of Accounts issued its Independent Accountant's Report based upon a review of Benton Township records. The report contained the conclusion that the fire truck purchase was made "with proceeds of a loan that was not properly approved by the Township Board." (App. 307.) The report further indicated that neither the Trustee nor the Township Board had signed the promissory note.

[6] The Bank seized Benton Township checking account funds and applied those funds in setoff to sums due under the promissory note. On December 21, 2012, the Bank and Benton Township entered into a Partial Settlement & Dispute Resolution Agreement. Pursuant to the terms of the agreement, Benton Township surrendered the fire truck, and the Bank sold it for $212,866.00 and applied the funds to the outstanding loan. The Bank restored the funds it had

previously taken as an offset, except for $30,000, which was by agreement applied to the loan. Benton Township also made a $37,529.48 payment.[2]

[7] After the sale proceeds and payments were applied, the Bank sought $102,273.90 in principal and interest, plus attorney's fees and costs of $45,757.65. On May 8, 2013, the Bank filed a complaint against Benton Township. Benton Township answered the complaint, denying that the Bank was entitled to any additional recovery.

[8] On February 27, 2014, the Bank filed a motion for summary judgment. On March 25, 2014, Benton Township filed a cross-motion for summary judgment. A hearing on those motions was conducted on June 12, 2014. On July 2, 2014, the trial court entered an order granting summary judgment to Benton Township, concluding that the loan transaction was void because of the failure to provide taxpayers with statutorily-required notice and an opportunity for remonstrance. The Bank filed a motion to correct error, which was denied. This appeal ensued.

# Discussion and Decision

---

[2] As such, Benton Township made payments equal to the excess loan proceeds of $47,529.48 and $20,000.00 on the underlying debt.

## Standard of Review

The Bank contends that the trial court erred when it denied the Bank's motion to correct error following the grant of summary judgment in favor of Benton Township. We generally review the denial of a motion to correct error for an abuse of discretion. *Kornelik v. Mittal Steel USA, Inc.*, 952 N.E.2d 320, 324 (Ind. Ct. App. 2011), *trans. denied*. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Hawkins v. Cannon*, 826 N.E.2d 658, 661 (Ind. Ct. App. 2005), *trans. denied*. Questions of law are reviewed de novo and we owe no deference to the trial court's legal conclusions. *In re Guardianship of Phillips*, 926 N.E.2d 1103, 1106 (Ind. Ct. App. 2010).

Here, the Bank's motion to correct error sought to set aside a grant of summary judgment. A trial court's grant of summary judgment on appeal to this Court is "'clothed with a presumption of validity,'" and an appellant has the burden of demonstrating that the grant of summary judgment was erroneous. *Williams v. Tharp*, 914 N.E.2d 756, 762 (Ind. 2009) (quoting *Rosi v. Bus. Furniture Corp.*, 615 N.E.2d 431, 434 (Ind. 1993)). The standard of review is not altered by the fact that the parties made cross-motions for summary judgment. *Ind. Farmers Mut. Ins. Grp. v. Blaskie*, 727 N.E.2d 13, 15 (Ind. Ct. App. 2000). Instead, we consider each motion separately according to our well established standard of review:

When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

*Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269-70 (Ind. 2009) (internal citations omitted).

[11] In moving for summary judgment, the Bank contended that it has a valid promissory note and that it is equitably entitled to payment for that which Benton Township has received and enjoyed. In support of its cross-motion for summary judgment, Benton Township argued that the purported contract for debt is void because it was not incurred in a statutorily-prescribed manner. The trial court entered findings of fact and conclusions in response to these arguments. While a trial court's annunciation of findings of fact and conclusions on such matters may aid our review and reveal the reasoning of the trial court, they are not required and are not binding upon appeal. *New Albany Historic Pres. Comm'n v. Bradford Realty, Inc.*, 965 N.E.2d 79, 84 (Ind. Ct. App. 2012). The role of the trial court at summary judgment is not to act as a trier of fact, but rather to determine whether the movant established, prima facie, either

that there is insufficient evidence to proceed to trial, or that the movant is otherwise entitled to judgment as a matter of law. *Kader v. State Dept. of Correction*, 1 N.E.3d 717, 727 (Ind. Ct. App. 2013). Witness credibility and the relative apparent weight of evidence are not relevant considerations at summary judgment. *Id.*

## *Analysis*

[12] In asserting its entitlement to summary judgment, the Bank primarily relies upon the fact that it holds a promissory note evidencing the indebtedness. Generally, construction of written contracts is a question of law for which summary judgment is particularly appropriate. *Stelko Elec. v. Taylor Comm. Schls*, 826 N.E.2d 152, 155 (Ind. Ct. App. 2005). When terms of a contract are clear and unambiguous, the terms are conclusive, and the court will not construe the contract or look at extrinsic evidence, but will simply apply the contract provisions. *Id.* at 156.

[13] However, the instant promissory note does not give rise to claims of ambiguity or competing interpretations of its terms. Rather, it is alleged to be unenforceable against the Township Board because neither the Trustee nor a board member executed it. Moreover, because of statutory enactments, the Benton Township taxpayers must essentially be made parties to a valid contract for indebtedness for which they will ultimately be liable.

[14] The parties agree that Indiana Code section 36-8-13-6.5 affords taxpayers a right of judicial review of township expenditures. Benton Township contends –

and the trial court agreed – that the instant claim is barred because the taxpayers were not given notice and opportunity for objection or judicial review. The Bank, while recognizing that taxpayers have a right of remonstrance, argues that the omission does not render a township loan obligation invalid, because a township is authorized to borrow funds for equipment and an obligation of the township is binding notwithstanding other law.

[15] Thus, the dispute between the parties distills to one of statutory interpretation. The interpretation of a statute is a question of law, to be reviewed de novo. *Porter Dev., LLC v. First Nat'l Bank of Valparaiso*, 866 N.E.2d 775, 778 (Ind. 2007). An unambiguous statute will not be subject to interpretation but rather the words and phrases will be read in the plain, ordinary, and usual sense. *Butler v. Ind. Dep't of Ins.*, 904 N.E.2d 198, 202 (Ind. 2009). When a statute is susceptible to more than one interpretation, it is deemed ambiguous and the well-established rules of statutory construction are applicable. *Barrett v. City of Brazil*, 919 N.E.2d 1176, 1179 (Ind. Ct. App. 2010), *trans. denied*. One such rule is that the primary goal of statutory construction is to determine, give effect to, and implement the intent of our Legislature. *Id.* Additionally, statutes concerning the same subject matter must be read together in an attempt to harmonize and give effect to each. *Id.* Where provisions of a statute are in conflict, the specific provision will take priority over the general provision. *Id.*

[16] Both parties direct our attention to Indiana Code section 36-8-13-6, entitled "Purchase of firefighting apparatus and equipment; loans; tax levy," which provides:

> (a) Subject to section 6.5 of this chapter, the executive and legislative body, on behalf of the township, may also borrow the necessary money from a financial institution in Indiana to make the purchase on the same terms. They shall, on behalf of the township, execute and deliver to the institution the negotiable note or bond of the township for the sum borrowed. The note or bond must bear interest, with both principal and interest payable in equal or approximately equal installments on January 1 and July 1 each year over a period not exceeding six (6) years.

> (b) The first installment of principal and interest on a contract, chattel mortgage, note, or bond is due on the next January 1 or July 1 following the first tax collection for which it is possible for the township to levy a tax. The executive and legislative body shall appropriate and levy a tax each year sufficient to pay the obligation according to its terms. An obligation of the township executed under this chapter is a valid and binding obligation of the township, notwithstanding any tax limitation, debt limitation, bonding, borrowing, or other statute to the contrary.

[17] Indiana Code section 36-8-13-6.5, entitled "Taxpayers' objections; judicial review," provides in relevant part:

> (a) If the executive and the legislative body determine that money should be borrowed under section 6 of this chapter, not less than ten (10) taxpayers in the township who disagree with the determination may file a petition in the office of the county auditor not more than thirty (30) days after notice of the determination is given. The petition must state the taxpayers' objections and the reasons why the taxpayers believe the borrowing to be unnecessary or unwise.

(b) The county auditor shall immediately certify a copy of the petition, together with other data necessary to present the questions involved, to the department of local government finance. Upon receipt of the certified petition and other data, the department of local government finance shall fix a time and place for the hearing of the matter. . . .

[18] The Bank relies upon the language of Indiana Code section 36-8-13-6.5(b) recognizing the valid and binding nature of a township obligation. The trial court observed the inclusion of language describing binding debt as debt incurred "subject to section 6.5 of this chapter."

[19] The statute authorizing a purchase of firefighting apparatus first provides that borrowing is "subject to section 6.5 of this chapter[.]" Ind. Code § 36-8-13-6(a). In turn, section 6.5 provides for taxpayer remonstrance and judicial review, with requisite notice and hearing. "The Court presumes that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals." *Prewitt v. State*, 878 N.E.2d 184, 186 (Ind. 2007). Although a township board is empowered to borrow for firefighting equipment, it must do so in compliance with statutory procedures. A valid contract for purchase of firefighting equipment effectively binds the taxpayers. The taxpayers are entitled to statutory protections including notice and opportunity to object.

[20] The Bank does not deny the absence of a formal appropriation or statutory compliance. Nor does the Bank dispute that it tendered a large sum of money upon execution of a promissory note by a part-time employee, as Trustee,

although she was not the Trustee. The Bank's proposed remedy for its lack of diligence is that statutory protections afforded the taxpayers be disregarded and the Bank collect in full according to the stated terms of its promissory note.

[21] However, our Courts have not historically rewarded a lack of diligence on the part of the lender by dispensing with taxpayer protections. A party dealing with a municipality is bound to take notice of the limited powers of the municipality and of the laws governing the municipality in making contracts. *City of New Albany v. New Albany St. Ry. Co.*, 172 Ind. 487, 490, 87 N.E. 1084 (1909).

[22] In *Sunman-Dearborn Comm. Sch. Corp. v. Kral-Zepf-Freitag & Assoc.*, 338 N.E.2d 707, 708 (Ind. Ct. App. 1975), an architectural firm had initiated an action against a school corporation, seeking to recover the value of architectural and engineering services, although the trustee had not complied with the provisions of the Township Reform Act [I.C. § 17-4-29-3 (1971) (repealed)]. At that time, one provision of the Township Reform Act stated: "All contracts made in violation of this act shall be null and void." I.C. § 17-4-29-5. The Court acknowledged the statutory language and additionally quoted the language of our Indiana Supreme Court in *Mitchelltree Sch. Twp. v. Hall*, 163 Ind. 667, 72 N.E. 641 (1904):

> It has been uniformly held that a township trustee is a special agent, possessing only statutory powers, and can only bind the township when authorized by statute and in the manner specified therein, and that all who deal with him must, at their peril, take notice of the extent of his authority, and the party seeking to enforce a contract against a township for a debt contracted by the township trustee takes the

> burden of showing by allegation and proof that all the conditions existed which conferred authority upon the trustee to contract the debt.

*Sunman-Dearborn*, 338 N.E.2d at 715.  The Court concluded that the architectural firm was required to prove statutory compliance as a condition to enforcement of the contracts in question, and had failed to do so.  *Id.*

[23]  Here, the lack of statutory compliance is undisputed.  A single conclusion can be drawn – the purported contract between Benton Township and the Bank is invalid.

[24]  The Bank alternatively contends that, even if its contract is unenforceable, it is entitled to recover based upon common law or equitable theories.  First, the Bank claims that there is an "account stated" because Benton Township made no objection to multiple monthly statements detailing sums advanced and payments due.  The Bank directs our attention to *B.E.I., Inc. v. Newcomer Lumber & Supply*, 745 N.E.2d 233 (Ind. Ct. App. 2001).  The *B.E.I.* court described an account stated as "an agreement between the parties that all items of an account and balance are correct, together with a promise, expressed or implied to pay the balance."  *Id.* at 236.  The Court then explained:  "[i]t operates as a new contract without the need for renewed consideration, and the plaintiff does not need to plead and prove the creation and performance of each contract underlying the account."  *Id.*

[25]  In accordance with *B.E.I.*, the Bank asserts that a new contract was formed when statements to Benton Township were received without protest.  In effect,

the Bank suggests that a township, although required to comply with statutory procedures to incur debt, may circumvent those requirements by simply acknowledging the existence of a debt. The Bank's position is unavailing, in that the parties are not simply a creditor and account debtor. Ultimately, it is the taxpayers who must pay. Any "new contract" for firefighting equipment could not be formed in disregard of the relevant statutory requirements. A steward of public funds may not simply dispense with taxpayer protections by accepting statements without complaint.

[26] The Bank also deems itself entitled to equitable remedies because of the conduct of Benton Township after procedural errors came to light. According to the Bank, Benton Township board members simply determined that a smaller truck would be more desirable to maneuver on rural roads and thereafter deliberately failed to cure defects in its acquisition of debt.

[27] The Bank suggests that appropriate equitable theories are "a theory of money had and received" and quantum meruit – also referred to as unjust enrichment. (Appellant's Brief at 16-18.) The Bank insists that it conferred a measurable benefit upon Benton Township under such circumstances that Benton Township's retention of the benefit would be unjust. *See Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991) (describing quantum meruit as a legal fiction to permit recovery where there is no contract but where the circumstances are such that under the law of natural and immutable justice there should be a recovery as though there had been a promise).

The Bank maintains that a lack of full statutory compliance in executing a contract has been excused to permit payments for goods received and enjoyed. *See Boyd v. Black Sch. Twp.*, 123 Ind. 1, 23 N.E. 862 (1890). In *Boyd*, a school township did not follow statutory procedures for incurring debt, but received and used school furniture which was "suitable and necessary." *Id.* at 863. On appeal after the vendor was awarded less than the full contract price, the Court acknowledged that "the contract was invalid for want of a compliance with the statute," and determined that the township was "only bound to pay the actual value of what it received." *Id.* Ultimately, the township paid $118.57 as opposed to the contract price of $342.00. *See also Schipper v. City of Aurora*, 121 Ind. 154, 22 N.E. 878, 879 (1889):

> Where a city or municipality receives the benefit of money, labor, or property upon a contract made without due formality, or which it had no authority to make, and which it refuses to execute, it will nevertheless be liable to the person conferring the benefit to the extent of the value of what has been received and appropriated, unless the contract was prohibited by statute, or in violation of public policy.

In *Schipper*, the town was required to pay for "an appropriation of the plaintiff's work." *Id.* at 880.

Also with regard to the provision of services to a municipality, in *Rieth-Riley Constr. Co., Inc. v. Town of Indian Village*, 138 Ind. App. 341, 348, 214 N.E.2d 208, 211 (1966), this Court noted that when certain salient facts are proven, recovery is possible, even in the absence of a valid contract. The defendant town had contracted for materials and labor necessary to improve streets but had failed to comply with a statute regarding public works projects. *See Id.* On

appeal, the town argued that the contract was void and unenforceable but the Court found "if the contract be invalid for want of compliance with a statute but the town receives and enjoys the benefits, the town is nevertheless liable to pay the actual value of what it received." *Id.* at 138 Ind. App. 347-48; 214 N.E.2d at 211. According to the Court, "there is not one law for the state and another for its subjects." *Id.*

[30] Likewise, in *Heeter v. Western Boone Cnty. Comm. Sch. Corp.*, 147 Ind. Ct. App. 153, 259 N.E.2d 99, 100 (1970), the defendant school corporation could ultimately be required to pay an architect for the value of his services. The facts to be established to permit recovery of the reasonable value of services are:

> Services were rendered in favor of the municipal corporation in question;
> Services were rendered with the full knowledge of the governing body of such municipal corporation;
> The governing body of such municipal corporation knowingly accepted the benefits of such services; and
> The purported contract for such services was not wholly beyond the scope of the municipal corporation's powers.

147 Ind. Ct. App. at 162; 259 N.E.2d at 104.

[31] Benton Township responds that, with rare exception, equitable remedies will not be applied against a governmental entity. *See Hannon v. Metro. Dev. Comm'n of Marion Cnty.*, 685 N.E.2d 1075, 1080 (Ind. Ct. App. 1997) (acknowledging, in discussing a claim of equitable estoppel and laches, that "equitable estoppel cannot ordinarily be applied against government entities" and "the exception is if the public interest would be threatened by the government's conduct").

Benton Township heavily relies upon the language of *Cablevision of Chicago v. Colby Cable Corp.*, 417 N.E.2d 348 (Ind. Ct. App. 1981).

[32]     *Cablevision* involved facts dissimilar to those of the instant case. Cablevision and a taxpayer sought a declaration that a purported cable television franchise received by Colby was invalid, as the franchise was not preceded by a contract with the Hammond Board of Public Works and Safety, as required by statute. *Id.* at 351. In addressing the issue of whether the trial court abused its discretion by denying Cablevision's request for preliminary injunctive relief, the Court addressed whether actions by a municipality in violation of controlling statutes are subject to the equitable defenses of estoppel or laches. *Id.* at 354. The Court acknowledged the general rule in Indiana, that is, "the public, whether it be a state or local governmental body, cannot be estopped by the unlawful acts of public officials." *Id.* The reason underlying the rule is that "'if laches, waiver or estoppel did apply against the public, a dishonest, incompetent or negligent public official could wreck the interests of the public.'" *Id.* (quoting *State v. Roberts*, 226 Ind. 106, 134, 78 N.E.2d 440, 446 (1948), *disapproved on other grounds by State ex rel. Indiana Dept. of Conservation v. Pulaski Circuit Court*, 231 Ind. 245 (1952)). Therefore, our courts have been particularly unsolicitous of estoppel and laches arguments in cases where the unauthorized acts of public officials on some level implicate government spending powers. *Id.*

[33]     The *Cablevision* Court described as an example a contract for garbage collection that was at issue in *Mazac v. City of Michigan City*, 98 Ind. App. 366, 189 N.E.

400 (1934). The contract entered into by Mazac had not been submitted to the city council as required by law, but Mazac alleged that the city was estopped from denying liability under the contract because the contract had been partly performed. *See id.* at 402. On appeal, the Court reasoned that a void contract could not be ratified. "Since the contract is void, and cannot become effective, there could be no estoppel." *Id.*

[34] Likewise, in *Hamer v. City of Huntington*, 215 Ind. 594, 21 N.E.2d 407 (1939), a city was not contractually bound to pay for a fire truck where funds were not appropriated until after the contract was entered into and Indiana law required that funds be appropriated before the execution of the contract. Although the fire truck had been delivered and accepted, the equitable doctrine of estoppel was rejected:

> If one dealing with the city could plead ignorance of the laws governing the city or of the appropriated balance which the city has and thereby make valid a contract made by the city contrary to § 48-1507, … the effect of such statute and our budget laws would be destroyed.

*Id.* at 603, 21 N.E.2d at 411.

[35] In *City of Evansville v. Follis*, 161 Ind. Ct. App. 396, 315 N.E.2d 724 (1974), the building commissioner had issued a building permit without checking property descriptions for a public easement. The homeowner attempted to raise the defense of estoppel, but our Court concluded: "[i]t has been held that where the facts are equally known or accessible to all parties concerned, as there were in the case at bar, there can be no estoppel. … [S]ince this information was readily

accessible to both parties from public records, the requisite elements of estoppel are missing." *Id.* at 403, 315 N.E.2d at 728.

[36] After reviewing this authority, the *Cablevision* Court reiterated:

> What is certain is that when our law clearly limits the authority of government officials to act, or when the law clearly prescribes a procedure to be followed, private parties must carefully take note of that limitation or procedure before dealing with a governmental entity. … Similarly, when the public record contains information relevant to the individual's circumstance, he must seek it out.

[37] 417 N.E.2d at 355-56. Nonetheless, the Court recognized that application of equitable doctrines when dealing with a public entity is not absolutely prohibited. *Id.* at 356. Observing that the case did not "involve the unauthorized expenditure of taxpayers' money as did *Mazac* and *Hamer*," the Court determined that there remained a question of fact on whether the elements of estoppel or laches were present. *Id.* at 356-57.

[38] To synthesize, municipal corporations must exercise their powers in strict compliance with statutory procedures and doctrines of estoppel or ratification will not validate a contract formed outside statutory parameters. However, in some instances, quantum meruit relief may be available to prevent the unfair retention of benefits. As an over-arching principle, it is clear that those who deal with taxpayer funds must be ever-vigilant to ascertain the public actor's authority. *Cablevision*, 417 N.E.2d at 355.

[39] "When the legislature enacts procedures and timetables which act as precedent to the exercise of some right or remedy, those procedures cannot be

circumvented by the unauthorized acts and statements of officers, agents or staff of the various departments of our state government." *Middleton Motors, Inc. v. Ind. Dep't of State Revenue*, 269 Ind. 282, 285, 380 N.E.2d 79, 81 (1978). We conclude that the promissory note at issue is not a proper basis for a grant of equitable relief. First, the matter involves the unauthorized expenditure of taxpayer funds. Second, the circumstances are such that the Bank was obliged to seek out information of public record and failed to do so. Indeed, the Bank prepared a promissory note for execution by a part-time township employee rather than the Benton Township Trustee. Finally, Benton Township did not retain property for which it refused to pay, and the parties essentially addressed the equities surrounding the surrender by entering into a partial settlement. Although the loan was invalid, the township nevertheless mitigated the Bank's damages by surrendering the fire truck and paying cash of $67,529.48. This is not a situation involving "extreme unfairness" such that equity should step in against a governmental entity. *Thomas v. Ind. Bureau of Motor Vehicles*, 979 N.E.2d 169, 174 (Ind. Ct. App. 2012). Equitable remedies are not available to permit the Bank's collection in full upon its faulty promissory note.

# Conclusion

[40] The purported contract executed by a township employee in contravention of statutory requirements is invalid. The Bank may not pursue additional equitable remedies against Benton Township, beyond the partial settlement

agreement.  Accordingly, the trial court properly granted summary judgment to Benton Township as opposed to the Bank.

[41]     Affirmed.


Robb, J., and Brown, J., concur.