**B.E.I., INC., and Donald W. Bottamiller, Appellants– Defendants,**

v.

**NEWCOMER LUMBER & SUPPLY CO., INC., Appellee–Plaintiff.**

No. 55A01–0007–CV–232.

Court of Appeals of Indiana.

Feb. 21, 2001.

Donald L. Centers, Hannon Centers Roop & Hutton, P.C., Indianapolis, IN, Attorney for Appellant.

Rodric D. Bray, Harris & Currens, P.C., Mooresville, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge

*STATEMENT OF THE CASE*

Donald W. Bottamiller d/b/a B.E.I., Inc. ("Bottamiller") appeals the trial court's

judgment against him in the amount of $27,356.79.

We affirm.

## ISSUE

Whether there is sufficient evidence to support the judgment.

## FACTS

Newcomer Lumber & Supply Co., Inc., ("Newcomer Lumber"), is an Indiana corporation in the business of selling building products. B.E.I., Inc. is also an Indiana corporation, and Bottamiller is its president.

In the fall of 1997, Bottamiller began building a 4,500 to 5,000 square foot addition onto his home and office located in Castleton. On September 5, 1997, Tracy Clayton, a Newcomer Lumber sales representative, provided Bottamiller with estimated costs of some of the building materials needed. Tracy and Carol Clayton ("the Claytons") provided additional estimates throughout the project.

On September 20, 1997, Bottamiller signed a Buyer's Credit Application and Open Account Agreement ("the Agreement"). The Agreement stated that Bottamiller was unconditionally guaranteeing full and prompt payment. The Agreement was faxed to Newcomer Lumber on September 23, 1997, and James Newcomer, president of Newcomer Lumber, signed the Agreement on September 25, 1997.

Soon thereafter, the Claytons were instructed by Bottamiller to begin placing orders for building materials. The Claytons would order the materials for Bottamiller "to make sure the flow of materials was good." (R. 289). The building materials were received and used in the construction of Bottamiller's addition.

From October 1997 to November 1998, Newcomer Lumber sent invoices to Bottamiller requesting payment on a monthly basis. Occasionally, materials were returned to Newcomer Lumber for various reasons, and Bottamiller's account was credited. However, during the project, Bottamiller failed to make timely payments to Newcomer Lumber. James Newcomer called Bottamiller and asked if there was a problem. Bottamiller requested copies of invoices. James Newcomer supplied Bottamiller with a statement, "a history of his account," and "all the invoices." (R. 290).

Several months later, Newcomer Lumber still had not received any payments. James Newcomer called Bottamiller and asked him about payment. Again, Bottamiller asked for a second set of invoices. The second set was handed to Bottamiller at Newcomer Lumber's office in Mooresville. While Bottamiller was there, he complained about "dust that got on a couple of his cars," but indicated that he would pay the bill. (R. 290). Despite further telephone calls, James Newcomer had no further contact with Bottamiller.

On July 2, 1999, Newcomer Lumber filed a Complaint for Damages in Morgan Circuit Court. In its complaint, Newcomer Lumber alleged that Bottamiller had agreed to purchase and guarantee payment for building materials supplied on an open account. Newcomer Lumber also alleged that Bottamiller owed an outstanding amount of $22,126.82 and sought attorney's fees and prejudgment interest. On September 17, 1999, Bottamiller filed an Answer To Complaint For Damages. In the answer, Bottamiller acknowledged that the outstanding balance had not been paid. Bottamiller claimed that a full accounting of material was never done, and asserted the affirmative defenses of accord and satisfaction, failure of consideration, and failure to account. A two-day bench trial was held on February 7 and April 7, 2000.

At trial, Joyce Blickensderfer, the office manager for Newcomer Lumber, testified that she was responsible for maintaining Newcomer's records. Newcomer Lumber introduced records, identified as plaintiff's exhibit number 3, showing an outstanding balance of $22,126.82. James Newcomer testified that he signed the Agreement that was faxed to Newcomer Lumber by Bottamiller. He also stated that Newcomer Lumber supplied Bottamiller with "[l]umber, cabinets, some interior trim products, [and] some exterior trim products, . . . ." (R. 292). James stated that Bottamiller was twice given copies of invoices when confronted about the outstanding balance, and that Bottamiller knew the cost of the materials before they were delivered. Additionally, James Newcomer testified that he never received a complaint from Bottamiller "regarding the invoices" or "about bad workmanship . . . ." (R. 292, 302).

Bottamiller testified that he had paid Newcomer Lumber a total of $84,997.76 and submitted two canceled checks totaling $34,226.62 into evidence. He stated that Newcomer Lumber had not credited his account for all materials that had been returned. Further, he testified that, despite his objections, certain material was delivered without his signature on the delivery ticket. Finally, Bottamiller stated that glass blocks and counter tops were not installed according to his specifications.

After evidence was heard, the trial court made the following finding of fact and conclusion of law:

2. That Newcomer Lumber and Bottamiller have had prior dealings and that Bottamiller received an account showing a balance against him and retained said account for a reasonable length of time sufficient to examine the same and make objections thereto, and

failed to do so, thereby rendered this an account stated. *Jasper Corp. v. Manufacturers' Appraisal Co.*, 153 Ind.App. 457, 287 N.E.2d 781, 784.

Judgment was entered against Bottamiller in the amount of $27,356.79.

## DECISION

Bottamiller argues that there was insufficient evidence to support the trial court's finding that an account stated existed. Specifically, Bottamiller argues that "there was no agreement between the parties that all items of the account and balance were correct." Bottamiller's Brief at 7. Bottamiller also argues that there was no agreement, express or implied, to pay the balance.

Whether a case is civil or criminal, the standard of review regarding challenges to the sufficiency of the evidence is the same. *Gash v. Kohm,* 476 N.E.2d 910 (Ind.Ct.App.1985). Therefore, we will not reweigh the evidence or question the credibility of witnesses. *Van Santen v. Treece,* 665 N.E.2d 943 (Ind.Ct.App.1996). "We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom which support the verdict." *Id.* at 944.

"An account stated is an agreement between the parties that all items of an account and balance are correct, together with a promise, expressed or implied to pay the balance." *MHC Surgical Center Associates, Inc. v. State Office of Medicaid Policy and Planning,* 699 N.E.2d 306, 309 (Ind.Ct.App.1998). It operates as a new contract without the need for renewed consideration, and the plaintiff does not need to plead and prove the creation and performance of each contract underlying the account. JOHN D. CALAMARI & JOSEPH M. PERILLO, CONTRACTS § 21–9, at 875 (3rd ed.1987).

■ "An agreement that the balance is correct may be inferred from delivery of the statement and the account debtor's failure to object to the amount of the statement within a reasonable amount of time." *Auffenberg v. Board of Trustees of Columbus Regional Hosp.*, 646 N.E.2d 328, 331 (Ind.Ct.App.1995). When the underlying facts are in dispute, the question of what constitutes a reasonable amount of time is a question of fact and law. *Wiggins v. Burkham*, 77 U.S. (10 Wall.) 129, 19 L.Ed. 884 (1869).

■ The amount indicated on a statement is not conclusive, but it is prima facie evidence of the amount owed on the account. *Auffenberg*, 646 N.E.2d 328. "Once a prima facie case is made on an account stated, the burden of proof shifts to the account debtor to prove that the amount claimed is incorrect." *Id.* at 331. However, the parties must "view the account as a final adjustment of the respective demands between them. An account rendered for some other purpose will not be given the force and effect of an account that can be converted to an account stated." *MHC Surgical Center Associates, Inc.*, 699 N.E.2d at 310 (citation omitted).

■ In this case, Bottamiller asks us to reweigh the evidence and credibility of the witnesses, which we cannot do. There is sufficient evidence of probative value for the trial court to draw reasonable inferences to conclude that an account stated exists. For example, Newcomer Lumber introduced the Agreement and invoices showing an outstanding balance of $22,126.83. Newcomer Lumber provided two sets of invoices to Bottamiller, and James Newcomer, its president, testified that he was unaware of any objection from Bottamiller concerning the outstanding balance on the account.

Although Bottamiller testified at trial that he did not receive full credit on his account for all the materials he returned to Newcomer Lumber, he was not able to identify any incorrect invoices. Further, Bottamiller testified that he paid Newcomer Lumber $84,997.76, but the record only contains two canceled checks totaling $34,226.62. Additionally, Bottamiller was asked why he allegedly paid over $84,000 if he believed the invoices were incorrect. He stated, "We were paying very blindly, unfortunately, ... to get the project completed. It drug on for more than a year." (R. 410).

As a result, we find that the trial court was free to weigh the evidence and the credibility of the witnesses. After doing so, the trial court disbelieved Bottamiller's excuses for not making payment. The evidence supports the trial court's conclusions that the invoices showed the correct outstanding balance, that Bottamiller had not objected, and that an account stated did exist.

Affirmed.

RILEY and ROBB, JJ., concur.