# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**AARON M. FREEMAN**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**MATTHEW E. DUMAS**
Hostetter & Associates
Brownsburg, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| THRASHER BUSCHMANN & VOELKEL, P.C., ) | |
| ) | |
| Appellant-Plaintiff, ) | |
| ) | |
| vs. ) | No. 49A02-1406-CC-430 |
| ) | |
| ADPOINT, INC., JOEL HALL, and ) | |
| MARY HALL, ) | |
| ) | |
| Appellees-Defendants. ) | |

**APPEAL FROM THE MARION SUPERIOR COURT**
The Honorable James B. Osborn, Judge
Cause No. 49D14-1306-CC-25036

**January 13, 2015**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Thrasher, Buschmann, & Voelkel, P.C. ("TBV") appeals the trial court's order of summary judgment in favor of Adpoint Incorporated, Joel Hall, and Mary Hall (collectively, "Adpoint"). TBV raises two issues which we consolidate and restate as whether the court erred in granting summary judgment in favor of Adpoint. We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

The designated evidence reveals that on April 24, 2009, Adpoint hired TBV to represent them with regard to the sale of their Sign-A-Rama franchise located in Fishers, Indiana, to R. Myers & Associates, LLC ("R. Myers"), by signing an Engagement Letter with TBV. The Engagement Letter stated that TBV "bills for its services on an hourly basis" and listed the hourly rate for various attorneys at the firm including Steven C. Earnhart, at $230.00 per hour, and Laura B. Conway, at $150.00 per hour. The Engagement Letter also specified that, "[f]or bills unpaid when due, [TBV] reserves the right to add a Late Charge in the amount of up to $50.00 per month of delinquency to compensate for additional handling." Appellant's Appendix at 9.

After the closing of the sale, R. Myers breached the terms of the Promissory Note and Security Agreement[1] by failing to make payments as required, and litigation ensued (the "Underlying Litigation"). At one point, the parties attempted mediation, and on September 22, 2010, Attorney Conway wrote a letter to the mediator which began by stating: "This is a very straightforward case regarding the failure of [R. Myers] to pay

[1] The designated evidence does not contain the Promissory Note and Security Agreement.

2

[Adpoint] the amount due. Unfortunately, the actions of [R. Myers] and their counsel have complicated the matter and greatly increased the amount of attorneys' fees." Appellant's Appendix at 11. The letter also chronicled instances in which R. Myers and its counsel acted in a dilatory fashion, leading to increased attorney fees incurred by Adpoint, including: (1) having the first hearing reset four different times; (2) R. Myers's counsel filing a meritless Motion for Change of Judge in an attempt to continue the first hearing; (3) R. Myers failing to cooperate with Adpoint's discovery attempts which required court intervention multiple times; (4) R. Myers's counsel making numerous threats to file disciplinary actions against Attorney Conway unless she withdrew a certain motion made regarding the discovery attempts; and (5) R. Myers's counsel withdrawing his consent to mediation after TBV prepared to mediate the matter. The letter also indicated that "[t]he total amount remaining due under the terms of the Promissory Note is $33,677.35 . . . ." Id. at 15.

On February 22, 2013, the Hamilton Superior Court entered Findings of Fact and Conclusions of Law in Adpoint's favor and against R. Myers in the Underlying Litigation (the "February 22 Order").[2] Specifically, the court ordered that Adpoint was entitled to a sum of $86,595.43 plus interest,[3] which included $26,923.15 in unpaid principal amounts due under the Promissory Note, $8,568.20 for interest accrued "from September 6, 2012 through the date of the judgment," $300.00 for late fees incurred by R. Myers under the

---

[2] R. Myers appealed the February 22 Order, and on September 24, 2014, this court affirmed the trial court. R. Myers & Assocs., LLC v. Adpoint, Inc., No. 29A02-1305-PL-449 (Ind. Ct. App. Sept. 24, 2014).

[3] Interest was ordered to be calculated "from the date of entry of judgment at the rate of 8% per annum." Appellant's Appendix at 30.

terms of the Promissory Note, and $50,804.08 in attorneys' fees. Id. at 29. The February 22 Order contained the following conclusions of law related to the court's award of attorneys' fees:

> X.  Both R. Myers and Mr. Myers are liable for attorneys' fees incurred by Adpoint under the terms of the Promissory Note and Asset Purchase Agreement. [Adpoint] is claiming attorneys' fees in the amount of $76,206.13. The Court is awarding fees in the amount of $50,804.08.

> XI.  The attorneys' fees awarded by the Court are reasonable due to the facts and circumstances of the case.

Id. at 30. The Hamilton Superior Court also found for Adpoint on a third-party complaint and counterclaim filed by R. Myers.

TBV stopped providing legal services to Adpoint on approximately February 28, 2013. On or around March 12, 2013, TBV by Attorneys Earnhart and Conway filed its Notice of Attorneys' Lien in the Hamilton Superior Court on all amounts that remained unpaid by Adpoint and specifically stated that TBV "has advanced costs, expenses, and fees to [Adpoint] in the amount of $55,487.34" which was unpaid and continued to accrue. Id. at 33. On June 21, 2013, TBV filed its Complaint on Account, on Account Stated, and Breach of Contract in the Marion Superior Court against Adpoint which consisted of three counts. Count I alleged that Adpoint was indebted to TBV "in the sum of $53,245.59 for professional services . . . as more fully appears on Exhibit A, attached hereto and made a part thereof, together with interest at the rate of 8% per annum from February 1, 2013."[4] Id. at 35. Count II alleged that TBV "provided periodic monthly

_____

[4] Exhibit A, which appears to consist of a breakdown of the legal fees and other monies owed to TBV by Adpoint, is not contained in the designated evidence or otherwise in either appendix.

4

statement(s) of account to" Adpoint and that "[a]n itemization and/or copies of such statement(s) is/are attached hereto . . . as Exhibit A," that Adpoint "has not disputed the indebtedness and as a result of [Adpoint's] failure to object . . . after a reasonable time, an account stated has arisen between the parties," and that the amount past due and unpaid is $53,245.59 plus interest at 8% per annum. Id. at 36. Count III alleged that Adpoint breached its contract with TBV by failing to make payment and that the sum of $53,245.59 plus interest at 8% per annum was owing on the contract.

On July 17, 2013, counsel for Adpoint sent a letter to counsel for TBV stating that he "wanted . . . to clarify some issues," and noting, among other things, that Adpoint had paid TBV $34,344.52 for services rendered in the Underlying Litigation, as well as $4,196.50 for services rendered in the business transaction leading to the Underlying Litigation. Id. at 38. The letter also stated that "res judicata dictates that the amount of services rendered by [TBV] for the [Underlying Litigation] is $50,804.08, and Adpoint has already paid [TBV] $34,344.52." Id. On August 14, 2013, Adpoint filed its Answer generally denying the allegations of the Complaint and asserting affirmative defenses including that the Complaint "is barred by payment, collateral estoppel and res judicata" and that TBV's "attorney fees were not reasonable." Id. at 39.

On November 8, 2013, TBV filed its Motion for Summary Judgment, along with its designation of evidence and a memorandum of law in support of summary judgment.[5] TBV's motion stated that, "[a]s of October 2, 2013, a total of $53,712.89, plus attorneys'

---

[5] The chronological case summary states that TBV filed a memorandum of law in support of its motion for summary judgment. The record does not contain this memorandum.

fees and costs remain due" from Adpoint.  Id. at 43.  It also stated that, as to pursuing this litigation against Adpoint, "[t]he total amount due for attorneys' fees and costs in this matter is $2,001.00," and cited to the Affidavit of Aaron Freeman, who was counsel for TBV.[6]  Id.  TBV's motion stated among other things that "[d]uring the representation, [Adpoint] paid TBV the sum of $37,653.60," and cited to the affidavit of Steven C. Earnhart at Paragraph 7, and "Reynolds Answer, p. 4."  Id. at 42.  Paragraph 7 of Earnhart's Affidavit states: "True and accurate copies of the invoices sent to [Adpoint] are attached hereto collectively as Exhibit 6, and all such invoices are held in the ordinary and regular course of [TBV's] business."  Id. at 46.  "Exhibit 6" is not contained in the designated evidence on appeal, nor is the "Reynolds Answer."  Also, TBV's designation of evidence states that it designated "Defendants' Ledger.  Attached to Affidavit of Steven C. Earnhart as Exhibit 'B.' Exhibit 6," but nothing resembling a ledger or marked "Exhibit B" is contained in the appellant's appendix.

On January 8, 2014, Adpoint filed its Response to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment arguing that the doctrines of *res judicata* and collateral estoppel apply and that TBV should be awarded a judgment in the amount of $13,150.48, which Adpoint admitted it still owed in attorney fees, and not $53,712.89 as requested by TBV.  Adpoint also argued in the alternative that TBV's "request to be paid another $53,712.89 in fees on top of the $37,653.60 they have already been paid is not reasonable" and that if *res judicata* and collateral estoppel did not apply,

---

[6] Although the appellant's appendix does not contain a copy of Aaron Freeman's affidavit, it is contained in the appellee's appendix.

at least $11,085.50 of TBV's fees were unreasonable. Id. at 52. Adpoint also noted in its response that TBV failed to designate evidence, that "no ledger or Exhibit B attached to Earnhart's affidavit was submitted with [TBV's] Summary Judgment materials," that "Earnhart's Affidavit states that invoices sent . . . are attached . . . as Exhibit 6, but nothing was attached," and that "[t]he Affidavit of Aaron Freeman, Esq. lacks personal knowledge and foundation, and is inadmissible . . . ." Id. at 54-55. Adpoint argued that "[t]he Affidavit of Steven Earnhart and [TBV's] Brief lack the facts to come to the conclusion that Adpoint owes [TBV] $53,712.89." Id. at 55.

On March 4, 2014, TBV filed its Reply Brief in Support of Plaintiff's Motion for Summary Judgment and Response to Defendants' Cross-Motion for Summary Judgment. Regarding Adpoint's argument in its response that TBV failed to properly designate evidence, TBV argued that it did not err in designating evidence because "[t]he items mentioned by Adpoint in its Response were previously submitted to the Court" and that "[e]ven assuming, *arguendo*, errors were made . . . summary judgment is not precluded on those grounds." Id. at 65. On May 5, 2014, the court held a hearing on the parties' cross-motions for summary judgment. That same day, Adpoint filed a Supplement to Their Cross Motion for Summary Judgment indicating that since the filing of their response they had paid TBV $2,000 and attached an order from the Hamilton Superior Court on a motion by Adpoint to apply funds in the amount of $2,000 to the judgment, which the Hamilton Superior Court granted. That order indicated that a check for $2,000 be issued to TBV care of Attorney Freeman. Adpoint argued in its supplement that TBV

7

was entitled to a "judgment in the amount of $11,150.48 . . . ." Appellee's Appendix at 56.

On June 2, 2014, the court issued an order summarily granting Adpoint's motion for summary judgment and denying TBV's motion for summary judgment. The court ordered that TBV "shall have a judgment of $11,150.48 against [Adpoint]." Appellant's Appendix at 6.

ISSUE / STANDARD OF REVIEW

The issue is whether the court erred in granting summary judgment in favor of Adpoint. We review a trial court's order granting summary judgment *de novo*. Alldredge v. Good Samaritan Home, Inc., 9 N.E.3d 1257, 1259 (Ind. 2014). We apply the same standard as the trial court: summary judgment is appropriate only where the moving party demonstrates there is no genuine issue of material fact and he is entitled to judgment as a matter of law. Id.; see also Ind. Trial Rule 56(C). If the moving party carries his burden, the non-moving party must then demonstrate the existence of a genuine issue of material fact in order to survive summary judgment. Id. Just as the trial court does, we resolve all questions and view all evidence in the light most favorable to the non-moving party, so as to not improperly deny him his day in court. Id. Our review of a summary judgment motion is limited to those materials designated to the trial court. Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. Catt v. Bd. of Comm'rs of Knox Cnty., 779 N.E.2d 1, 3 (Ind. 2002). To the extent that the parties filed cross-

8

motions for summary judgment, this fact does not alter our standard of review and instead we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. Sterling Commercial Credit-Mich., LLC v. Hammert's Iron Works, Inc., 998 N.E.2d 752, 756 (Ind. Ct. App. 2013).

## DISCUSSION

The parties dispute the application of both components of *res judicata* – issue preclusion and claim preclusion. Issue preclusion, or collateral estoppel, bars subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former lawsuit and that same fact or issue is presented in a subsequent suit. Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP, 976 N.E.2d 699, 704 (Ind. 2012) (citing Hayworth v. Schilli Leasing, Inc., 669 N.E.2d 165, 167 (Ind. 1996)), reh'g denied, cert. denied, 133 S. Ct. 2780 (2013). This rule applies even if the second adjudication is on a different claim. Id. (citing Tofany v. NBS Imaging Sys., Inc., 616 N.E.2d 1034, 1037 (Ind.1993)). Where, as here, a defendant seeks to prevent a plaintiff from asserting a claim that the plaintiff has previously litigated and lost, the use has been termed "defensive" collateral estoppel. Small v. Centocor, Inc., 731 N.E.2d 22, 28 (Ind. Ct. App. 2000), reh'g denied, trans. denied. There are three requirements for the doctrine of collateral estoppel to apply: (1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of the issues; and (3) the party to be estopped was a party or the privity of a party in the prior action. Nat'l Wine & Spirits, 976 N.E.2d at 704. Furthermore, two additional considerations are relevant in deciding whether the defensive use of collateral estoppel is appropriate: "whether the party against whom the judgment is

9

pled had a full and fair opportunity to litigate the issue, and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel." Id. (quoting Small, 731 N.E.2d at 28).

Also, the doctrine of *res judicata*, also known as claim preclusion, bars litigation of a claim after a final judgment has been rendered in a prior action involving the same claim between the same parties or their privies. Small, 731 N.E.2d at 26. The principle behind this doctrine, as well as the doctrine of collateral estoppel, is the prevention of repetitive litigation of the same dispute. Id. The following four requirements must be satisfied for a claim to be precluded under the doctrine of *res judicata*: 1) the former judgment must have been rendered by a court of competent jurisdiction; 2) the former judgment must have been rendered on the merits; 3) the matter now in issue was, or could have been, determined in the prior action; and 4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies. Id.

Initially, we examine the extent to which the issue of the sum owed by Adpoint to TBV was litigated in the Underlying Litigation. Collateral estoppel requires that the issue being raised has been identified in the previous litigation; similarly, for a subsequent claim to be barred by the doctrine of *res judicata*, it must be shown that the matter now at issue was, or could have been, determined in the prior action. The claims being raised by TBV are that it is owed additional monies for services rendered based on an account stated and that Adpoint breached its contract with TBV when it failed to pay for legal services provided by TBV. TBV argues that "[t]he amount owed by Adpoint to TBV for legal services rendered was never litigated and determined" and that

10

"[a]pplication of the R. Myers Trial Court's award of attorneys' fees to the instant matter is a purely inferential argument." Appellant's Brief at 14. For its part, Adpoint simply argues that "the issue of reasonable attorney fees was determined in the [Underlying Litigation] as evident by a review of the Findings" and that "[t]he issue of reasonableness of attorney fees was litigated . . . and it should not be litigated again . . . ." Appellee's Brief at 4-5.

In its February 22 Order, the Hamilton Superior Court noted that R. Myers was liable for attorneys' fees "under the terms of the Promissory Note and Asset Purchase Agreement," and it awarded attorney fees in the amount of $50,804.08, which it deemed "reasonable due to the facts and circumstances of the case." Appellant's Appendix at 30. This amount was factored into the overall damage award of $86,595.43 which the court awarded to Adpoint. Thus, the court ordered that R. Myers *reimburse* Adpoint for certain reasonable attorney fees incurred by Adpoint during the Underlying Litigation pursuant to the terms of the Promissory Note and Asset Purchase Agreement. It did not, however, consider the total amount Adpoint owed to TBV for services rendered under the contract between Adpoint and TBV. Accordingly, we find that both issue preclusion and claim preclusion are inapplicable to the counts raised in TBV's complaint.

In addition, for the reasons discussed below we find that Adpoint and TBV are not in privity for the purposes of *res judicata*. As noted above, the party against whom either issue preclusion or claim preclusion applies must have either been a party or the privy of a party in the prior litigation. Adpoint concedes that TBV was not a party to the Underlying Litigation. We must therefore examine whether TBV was in privity with

11

Adpoint at that stage. The term privity describes the relationship between persons who are parties to an action and those who are not parties to an action but whose interests in the action are such that they may nevertheless be bound by the judgment in that action. MicroVote Gen. Corp. v. Ind. Election Comm'n, 924 N.E.2d 184, 196 (Ind. Ct. App. 2010). Whereas a "party" is one who is directly interested in the subject matter and has a right to make a defense or control the proceedings, a "privy" is one who after rendition of the judgment has acquired an interest in the subject matter affected by the judgment. Id. The term includes those who control an action, though not a party to it, and those whose interests are represented by a party to the action. Id. As such, an entity does not have to control a prior action, or be a party to a prior action, for privity to exist. Id. Therefore, in determining the parties for *res judicata* purposes, this court looks beyond the nominal parties and treats those whose interest are involved as the real parties. Id.

TBV argues that it was not a privy to the Underlying Litigation, noting that its filing of the Notice of Attorneys' Lien to secure payment did not render it a party or a privy by either relevant definition. TBV notes that "[a]s counsel, [it] did not have ultimate control over final decisions within [the Underlying Litigation] and did not have authority to appeal the R. Myers Trial Court's determination of reasonable attorneys' fees, even if it wished to do so," citing to Ind. Professional Conduct Rule 1.2 for the proposition. Appellant's Brief at 15. Adpoint argues that it is in privity with TBV and specifically asserts that TBV "was clearly interested in and by way of their Notice of Attorneys' Lien have an interest in the" Underlying Litigation. Appellee's Brief at 5.

In examining this question, we find a discussion of the issue by the Supreme Court of Minnesota in Rucker v. Schmidt, 794 N.W.2d 114 (Minn. 2011), reh'g denied, instructive. In Rucker, Katherine Rucker successfully sued her ex-husband, Robert Rucker, for fraud on the court committed during a dissolution of marriage action, in which the trial court found that in the dissolution action Robert Rucker engaged in an intentional course of material misrepresentation and non-disclosure concerning the value of his business interest in a company that resulted in a "grossly unfair" property settlement. 794 N.W.2d at 115. She subsequently sued Robert's dissolution attorney and the law firm that employed him, Steven B. Schmidt and Rider Bennett, LLP (collectively, "Schmidt / RB"), based primarily on the same facts asserted in her suit against Robert Rucker, accusing them of fraud, fraud on the court, and aiding and abetting fraud in the marriage dissolution action. Id. The district court held that Katherine's separate action against Schmidt / RB was barred by *res judicata*, concluding specifically that privity existed between Robert Rucker and Schmidt / RB for the purpose of *res judicata* based on their attorney-client relationship, and it granted summary judgment in favor of Schmidt / RB.[7] Id.

---

[7] The Supreme Court of Minnessota in Rucker discussed Minnesota's doctrine of *res judicata* as follows:

> Res judicata applies as an absolute bar to a subsequent claim when: (1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter. All four prongs must be met for res judicata to apply.

794 N.W.2d at 117 (internal citation and quotations omitted) (footnote omitted).

On appeal, the parties agreed that the issue turned on the question of privity, in which Schmidt / RB argued that they were in privity with Robert "because the facts underlying Katherine['s] claims against them are the same facts underlying her claims in her fraud action against Robert" and "the conduct at issue arose out of [Schmidt / RB's] representation of Robert Rucker in the dissolution action." Id. at 117. The court, citing to the Restatement of Judgments, observed that "courts will find privity to exist for 'those who control an action although not parties to it,' 'those whose interests are represented by a party to the action,' and 'successors in interest to those having derivative claims.'" Id. at 118 (quoting RESTATEMENT (FIRST) OF JUDGMENTS § 83 cmt. a (1942)) (internal quotations omitted). The court next noted that "privity may also be found in other circumstances, beyond those categories noted in the Restatement, when a person is otherwise 'so identified in interest with another that he represents the same legal right.'" Id. (quoting McMenomy v. Ryden, 148 N.W.2d 804, 807 (Minn. 1967) (quoting 30A Am. Jur. Judgments § 399 (1958))). The court stated that "[b]ecause the circumstances in which privity will be found cannot be precisely defined, we have held that determining whether parties are in privity requires a careful examination of the circumstances of each case." Id. It stated that "[t]hus, the dispositive question is whether Schmidt and Rider Bennett are so identified in interest with Robert Rucker that they represent the same legal right." Id.

Schmidt / RB, in arguing that privity existed between them and Robert, conceded that in the fraud action against Robert they "did not have a 'controlling participation' or an 'active self-interest,'" they were not successors in interest to a derivative claim of a

14

party involved in the fraud action, and no party represented their interests. Id. Similarly, they did not assert that "any of the categorical circumstances in which privity has been found existed with respect to the dissolution proceeding." Id. at 119. Rather, Schmidt / RB claimed that they were in privity with Robert in the fraud action "because the attorney conduct on which the fraud claim against them is based was taken in the context of their attorney-client relationship with Robert Rucker in the dissolution action." Id. The court concluded that this relationship was "not sufficient to establish an identity of legal interests" and explained its reasoning as follows:

> An attorney is professionally obligated to advocate on behalf of his client. Therefore, the attorney and client necessarily have a common interest—more accurately, a common objective—in obtaining a favorable outcome for the client. Here, Schmidt and Rider Bennett had the common objective with Robert Rucker of obtaining a favorable outcome for him in the marriage dissolution proceeding. But that level of common interest in obtaining a favorable outcome in the dissolution action is not the kind of estate, blood, or legal interest that would give rise to privity for purposes of the fraud action. See State v. Lemmer, 736 N.W.2d 650, 660-61 (Minn. 2007) (stating that "[c]ommonality of interests alone is insufficient to establish privity"). Something more than the common objective of attorney and client in obtaining an outcome favorable to the client is necessary to establish privity. That something more—here, a mutuality of legal interest in the outcome of the dissolution action—is missing in this case. Therefore, we conclude that the attorney-client relationship and Schmidt's actions taken on behalf of Robert Rucker in the dissolution proceeding did not establish an identity of legal interests and therefore Schmidt and Rider Bennett were not in privity with Robert Rucker in the fraud action.

Id. (footnote omitted).

Here, the procedural posture differs somewhat from the facts of Rucker. Unlike in Rucker, the subsequent action was commenced by the law firm, TBV, who asserts that neither claim preclusion nor issue preclusion apply due to the *lack* of privity.

15

Nevertheless, we find <u>Rucker</u> persuasive in applying Indiana's law of privity, which again finds privity to exist in "those who control an action, though not a party to it, and those whose interests are represented by a party to the action." <u>MicroVote</u>, 924 N.E.2d at 196. Indeed, <u>Rucker</u> contains almost identical statements, which are quotes from the Restatement of Judgments. Also, just as we have said in Indiana that the court "looks beyond the nominal parties and treats those whose interest are involved as the real parties," <u>id.</u>, we believe that this question may be answered by examining whether an entity is "so identified in interest with another that he represents the same legal right." <u>Rucker</u>, 794 N.W.2d at 118.

TBV agreed to represent Adpoint in assisting Adpoint in selling a Sign-A-Rama franchise and in subsequent litigation related to that sale. The Hamilton Superior Court issued its fifteen-page February 22 Order containing 109 Findings of Fact concerning issues related to the sale. None of the evidentiary findings concerned any issue related to the fee owed by Adpoint to TBV in compensation for its representation. In Conclusion of Law X, the court concluded that R. Myers and Mr. Myers were liable for attorneys' fees under the terms of the Promissory Note and Asset Purchase Agreement and awarded fees in the amount of $50,804.08, an amount it deemed "reasonable due to the facts and circumstances of the case" as noted by Conclusion XI. Appellant's Appendix at 30. TBV's attorney-client relationship ended about a week following the entry of the February 22 Order.

Just as in <u>Rucker</u>, TBV was professionally obligated to advocate on behalf of Adpoint and necessarily had a common interest or objective in obtaining a favorable

16

outcome for Adpoint in the Underlying Litigation. However, "[s]omething more than the common objective of attorney and client in obtaining an outcome favorable to the client is necessary to establish privity" for *res judicata* purposes. See Rucker, 794 N.W.2d at 119. We find that the court awarding attorney fees from an adverse party does not satisfy the requirement that "something more" other than obtaining a favorable outcome to Adpoint was present which created "a mutuality of legal interest in the outcome" of the Underlying Litigation. Id. As discussed above, the February 22 Order was in favor of Adpoint, not TBV, and it awarded Adpoint "the sum of $86,595.43" plus interest, which included a sum of $50,804.08 which R. Myers owed to Adpoint for attorney fees under the terms of the Promissory Note and Asset Purchase Agreement. TBV, meanwhile, has in interest in being paid by Adpoint for services rendered. Accordingly, TBV did not "acquire[] an interest in the subject matter affected by the judgment." MicroVote, 924 N.E.2d at 196.

Our conclusion that TBV and Adpoint do not possess a mutuality of legal interest is bolstered by viewing Adpoint's claim in its proper context. R. Myers appealed the February 22 Order in the Underlying Litigation, and Adpoint did not assert an issue on cross-appeal challenging the attorney fee award. See R. Myers & Assocs., LLC v. Adpoint, Inc., No. 29A02-1305-PL-449, slip op. at 2 (Ind. Ct. App. Sept. 24, 2014). However, in the instant litigation Adpoint contends that the court's fee award of $50,804.08 decided the total amount that TBV was to be paid for its services rendered in representing Adpoint, despite the fact that it requested attorney fees in the amount of $76,206.13 in the Underlying Litigation. TBV was not a party below in the Underlying

17

Litigation and could not participate in the appeal thereon. See Ind. Appellate Rule 17(A) ("A party of record in the trial court or Administrative Agency shall be a party on appeal. . . ."). Indeed, as noted above TBV ceased representing Adpoint less than a week following the issuance of the February 22 Order and did not participate in the appeal even in a representative capacity. The fact that Adpoint did not cross-appeal the court's attorney fee award, instead concentrating on the issues raised by R. Myers, demonstrates that its legal interest and the legal interest of TBV are not mutual.

The trial court erred when it granted Adpoint's cross-motion for summary judgment to the extent its order was based on the doctrines of *res judicata* and collateral estoppel. Our discussion does not end there, however, as we must address TBV's motion for summary judgment and Adpoint's additional grounds for summary judgment. We need not engage in a lengthy discussion, however, because the sum of the designated evidence submitted in the record on appeal is insufficient to establish that no genuine issue of material fact exists and that judgment is warranted as a matter of law.

First, TBV asserts that it is "entitled to summary judgment due to the account stated," which it defines as "an agreement between the parties that all items of an account and balance are correct, together with a promise, expressed or implied to pay the balance." Appellant's Brief at 18 (quoting B.E.I. Inc. v. Newcomer Lumber & Supply Co., Inc., 745 N.E.2d 233, 236 (Ind. Ct. App. 2001)) (internal quotations omitted). As noted in B.E.I., "[a]n agreement that the balance is correct may be inferred from delivery of the statement and the account debtor's failure to object to the amount of the statement within a reasonable amount of time," and that "[w]hen the underlying facts are in dispute,

the question of what constitutes a reasonable amount of time is a question of fact and law." 745 N.E.2d at 237. Also, "[t]he amount indicated on a statement is not conclusive, but it is prima facie evidence of the amount owed on the account." Id. "Once a prima facie case is made on an account stated, the burden of proof shifts to the account debtor to prove that the amount claimed is incorrect." Id.

TBV argues that it "sent itemized invoices that were received by Adpoint for legal services rendered," that "Adpoint had ample time to dispute the specific charges listed," and that "Adpoint did not do so." Id. at 19. Regarding such invoices, however, the only evidence designated by TBV regarding them is the Affidavit of Steven C. Earnhart, which in Paragraph 7 states that "[t]rue and accurate copies of the invoices sent to [Adpoint] are attached hereto collectively as Exhibit 6, and all such invoices are held in the ordinary and regular course of [TBV's] business." Appellant's Appendix at 46. As noted above, "Exhibit 6" is not contained in the designated evidence on appeal. Also, TBV's designation of evidence states that it designated "Defendants' Ledger. Attached to Affidavit of Steven C. Earnhart as Exhibit 'B.' Exhibit 6," but nothing resembling a ledger or marked "Exhibit B" is contained in the appellant's appendix. Id. at 43. Also, TBV stated in its complaint that it attached "[a]n itemization and/or copies" of its "periodic monthly statement(s) of account" as Exhibit A, but such exhibit does not appear in the appellant's appendix. We further observe that TBV's summary judgment motion states that, "[u]nder the terms of the Engagement Letter, interest continues to accrue on the amounts owed at a rate of $353.18 per month," and cites to the Engagement Letter and to Paragraph 12 of Earnhart's affidavit. Id. Earnhart's Affidavit simply states

19

"[i]nterest continues to accrue on the amounts owed by [Adpoint] at a rate of $353.18 per month." Id. at 46. Our review of the Engagement Letter does not reveal a provision regarding the accrual of interest on overdue payments, and instead reveals that it includes a provision that TBV "reserve[d] the right to add a Late Charge in the amount of up to $50.00 per month of delinquency to compensate for additional handling." Id. at 9.

Even were we to assume that the law of account stated was applicable to the agreement between TBV and Adpoint, TBV has not designated prima facie evidence of statements indicating an amount owed. Also, we are unable to determine based upon the designated evidence whether Adpoint objected to certain amounts within a reasonable amount of time. The parties agree that Adpoint has paid TBV a total of $39,653.60 and Adpoint believes that TBV is rightfully owed another $11,150.48. At this stage, it appears that TBV believes it is owed approximately $53,712.89, although it is unclear what portion of that amount is comprised of interest which may or may not be accruing. Thus, the parties appear to disagree about fees totaling approximately $42,562.41. It is unclear from the record at what stage the contested fees became due, or why Adpoint agrees to certain fees but not others.

Second, the lack of designated evidence regarding monthly invoices or a ledger similarly precludes summary judgment in TBV's favor based upon a breach of contract claim. Adpoint effectively challenges whether it breached its agreement with TBV, arguing in its brief that TBV's fees were not reasonable, which was the basis for the trial court's award of $50,804.08, and that "at the very least" summary judgment in TBV's favor should be precluded because of the unreasonableness of TBV's fees. Appellee's

Brief at 7. Adpoint challenges "[s]pecific examples" of fees charged by TBV which it argues are unreasonable and total $11,085.50, and it designated certain invoices and included them in its appellee's appendix.[8] Id. TBV has not shown that it is entitled to summary judgment on this basis.

We conclude that the court erred in granting summary judgment in Adpoint's favor based upon *res judicata* and collateral estoppel. We remand for a hearing to consider the amount Adpoint still owes TBV for its representation in the Underlying Litigation.

CONCLUSION

For the foregoing reasons, we affirm the court's denial of TBV's motion for summary judgment, reverse the court's grant of Adpoint's cross-motion for summary judgment, and remand for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

BAILEY, J., and ROBB, J., concur.

---

[8] The invoices provided by Adpoint in its appellee's appendix do not appear to be the complete set of invoices TBV purportedly sent to Adpoint.